## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

_____

)
INTERNATIONAL BROTHERHOOD )
OF TEAMSTERS, )
           )
           Plaintiff, )
           )
v. )     Case No. _____
           )
UNITED AIRLINES, INC., )
           )
           Defendant. )
_____)

## COMPLAINT

The International Brotherhood of Teamsters ("IBT" or "the Union") brings this action to compel Defendant United Airlines, Inc. ("United") to arbitrate a grievance arising out the parties' collective bargaining agreement in accordance with United's obligations under the Railway Labor Act, 45 U.S.C. § 151, *et seq.*, ("RLA"). United has unlawfully refused to arbitrate a routine contractual grievance based on its contention that the collective bargaining agreement does not apply to work outside the United States. The agreement, however, expressly covers such work. Despite the parties' specific contract language covering such work and the settled law requiring that such contractual disputes be resolved in arbitration, United refuses to arbitrate. United took this position only after the parties had jointly selected a neutral arbitrator and scheduled a hearing; only after the Union had disclosed witnesses and exhibits; and only the evening before the arbitration hearing was scheduled to be held. United's action based on its unilateral and self-serving interpretation of the scope of the contract and its arbitration clause is detrimental to the parties' collective bargaining relationship, destructive of the mandatory grievance and arbitration process, and unlawful under the RLA.

**STATEMENT OF JURISDICTION**

1.      This action arises under the Railway Labor Act, 45 U.S.C. § 151, *et seq.*, and this Court therefore has federal question jurisdiction pursuant to 28 U.S.C. § 1331. This Court has jurisdiction to enforce the parties' obligations under the Act and to issue an order compelling the Defendant to arbitrate the grievance in dispute between the parties before their contractual System Board of Adjustment.

**VENUE**

2.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391.

**PARTIES**

3.      Plaintiff International Brotherhood of Teamsters is an unincorporated labor organization with its headquarters at 25 Louisiana Avenue, N.W., Washington, D.C. The IBT is the certified collective bargaining representative of the Mechanic and Related employees (a/k/a "Technicians") in the service of United pursuant to a certification issued by the National Mediation Board.

4.      Defendant United Airlines, Inc. is a publicly held company based in Chicago, Illinois. United is a "carrier" as that term is applied in Title II, Sections 201 and 202 of the RLA, 45 U.S.C. §§ 181, 182. United employs approximately 80,000 employees, including approximately 12,000 Technicians, and does business in this judicial district

**STATUTORY BACKGROUND**

5.      Labor relations in the railroad and airline industries are governed by the Railway Labor Act. The RLA sets forth procedures for the resolution of disputes arising out of or involving the formation, interpretation, and/or application of a collective bargaining agreement between a carrier and representative of its employees. The RLA distinguishes between two tracks

of resolution, depending upon whether the dispute is a "major" dispute or a "minor" dispute. *Consol. Rail Corp. v. Ry. Labor Execs. Ass'n*, 491 U.S. 299, 302-04 (1989).

6.      A dispute is "major" where the dispute relates to the formation or amendment of agreement terms affecting rates of pay, rules, or working conditions. The process for resolution of major disputes is governed by Section 2, Seventh and Section 6 of the Act. 45 U.S.C. § 152, Seventh; § 156.

7.      A dispute is "minor" where it relates to the interpretation or application of a provision of an existing collective bargaining agreement. Section 204 of the RLA, 45 U.S.C. § 184, included by amendment to the Act in 1936, provides for the resolution of minor disputes in the airline industry and mandates the establishment of adjustment boards covering air carriers and their employees:

> The disputes between an employee or group of employees and a carrier or carriers by air growing out of grievances, or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions … shall be handled in the usual manner up to and including the chief operating officer of the carrier designated to handle such disputes; but, failing to reach an adjustment in this manner, the disputes may be referred by petition of the parties or by either party to an appropriate adjustment board …
>
> It shall be the duty of every carrier and of its employees, acting through their representatives, selected in accordance with the provisions of this title, to establish a board of adjustment …

8.      Section 2, First of the RLA, 45 U.S.C. § 152, First, governs the duty of carriers and employees to settle disputes, providing in part:

> It shall be the duty of all carriers, their officers, agents, and employees to exert every reasonable effort to make and maintain agreements concerning rates of pay, rules, and working conditions …

**FACTS**

9.      United and the IBT are parties to a collective bargaining agreement (The "CBA"

or the "Agreement") executed on December 5, 2016, and which becomes amenable on December

5, 2022.

10.      The Agreement provides in Article 1, "Purpose, Scope and Status of Agreement"

that:

> The Company hereby recognizes the Union as the sole collective bargaining agent
> and authorized representative for those employees composing the craft or class of
> Mechanic and Related Employees, as certified by the National Mediation Board in
> Case No R-7363, issued on August 6, 2013.
>
> All aircraft maintenance work, facilities maintenance work and ground equipment
> maintenance work on current, new or later acquired aircraft, or on current or later
> acquired ground equipment and facilities, performed for the Company is
> recognized as coming within the jurisdiction of the Union and shall be performed
> by employees on the United Airlines technician master seniority list, except as
> otherwise provided in this Article.
>
> Supervisors and higher ranking officials shall not be permitted to perform work of
> any hourly rated job covered by this Agreement, except in emergencies as defined
> in Article 2, or when instructing, or training employees, or signing off work
> performed by covered employees, or troubleshooting.

*See* **Ex. 1 (CBA Excerpts)** attached.

11.      Because aircraft may need to be serviced and repaired at locations where United

does not employ Technicians, the parties have agreed to rules and procedures for United

Technicians to travel from their base location to locations where such work is required to be

performed. Such travel is known as a "Field Trip." The parties maintain a Field Trip roster,

which is used as needed to dispatch Technicians on the roster for Field Trips to both domestic

and foreign locations to perform maintenance away from their home station.

12.      Article 12 of the Agreement, "Field Trips," provides in part:

A Field Trip requires travel away from an employee's station, and may involve:

1. Returning aircraft or equipment requiring normal and non-reoccurring type maintenance to service, or

2. Performing maintenance at a point where regular maintenance is not assigned.

3. Accompanying and/or performing maintenance on Company charters.

*See* **Ex. 1 (CBA Excerpts)** attached.

13. The Agreement specifically provides in Article 1 that these rules and procedures

apply to Field Trips to locations outside the United States:

> This Agreement shall cover all work by covered employees on ***international*** field trips or performed by them in the course of other ***foreign*** operations.

14. In addition to the specific provision of the Agreement establishing that it applies

to international Field Trips, the Agreement also references the performance of

international/foreign work by IBT-represented Technicians in several of its other provisions:

> In the event the Company opens a maintenance facility ***outside the United States*** or its territories, and staffs the facility with covered employees, those covered employees assigned to such domicile shall be covered by all terms of this Agreement and shall continue to enjoy all the rights, privileges and immunities of the Railway Labor Act during their ***foreign*** service.

> Disputes concerning covered employees based at ***foreign*** domiciles shall be heard by the System Board of Adjustment pursuant to Articles 19 and 20 of this Agreement and paragraph G of this Article, as appropriate, and the decision of the System Board in such cases shall be enforceable in any court of competent jurisdiction in the United States…

> …

> The number of employees required to possess certain special authorizations on any given Field trip shall be equal to the amount necessary as governed by either the United General Maintenance Manual … and/or ***international*** law (as it relates to visas and passports)…

> …

> Employees shall be required to travel to Field Trips by air only on U.S. carriers … or ***foreign*** air carriers who are members of IATA…

…

All employees covered by this Agreement who are required to perform work … or for any other reason be away from their base station shall receive an expense allowance (per diem) for time away from base … The hourly per diem for domestic locations (including **Canada, Central America, the Caribbean and Mexico**) shall be two dollars and thirty cents ($2.30) per hour. The hourly per diem for **international** locations shall be two dollars and seventy-five cents ($2.75). These domestic and **international** per diem rates shall be increased by five cents ($0.05) per hour on each subsequent January 1st.

(emphasis added).

15.     IBT-represented Technicians at United, and its corporate predecessors, have performed domestic and international Field Trips since at least the 1990s, including to foreign destinations in Latin America, Europe, and Asia.

16.     The Agreement provides in Article 19, "Grievance Procedure" that:

In the event of a grievance arising over the interpretation or application of this Agreement or in the event of disciplinary action, not involving loss of pay, the following procedure shall be followed:

FIRST STEP

…

2. If the complaint cannot be resolved through a discussion, the grievance shall be reduced to writing by the employee and/or his representative, signed by the employee and/or his representative, and presented to his supervisor within ten (10) calendar days after the date of the discussion…

…

SECOND STEP

4. If the decision of the supervisor is not satisfactory, the employee and/or his Union Representative may appeal the grievance directly to the Managing Director…

…

6. Within fourteen (14) calendar days after the receipt of the written decision of the Managing Director … if the decision is not satisfactory to the employee and his

Union Representative, the Union may appeal such grievance to the System Board of Adjustment…

…

D. System Boards

…

2. The System Board shall render a decision no later than thirty (30) calendar days after it has closed the record in the hearing of the case. If the Board deadlocks, the Union may appeal the case to arbitration.

…

See **Ex. 1 (CBA Excerpts)** attached.

17. The Agreement provides in Article 20, "Board of Arbitration" that:

B. The parties shall enter into a submission agreement, which shall clearly state the arbitral issue or issues to be decided. … Either party may also submit its proposed version of the arbitral issue or issues to be decided by the arbitrator.

…

C. The decision of the impartial arbitrator shall be final and binding. The impartial arbitrator shall have no authority to modify, amend, revise, add to or subtract from any of the terms or conditions of the Agreement.

See **Ex. 1 (CBA Excerpts)** attached.

18. The parties' contractual "Board of Arbitration" is a "System Board of Adjustment" ("SBA") as the term is used in Section 204 of the RLA, and is established pursuant to that Section of the Act. The Board possesses exclusive jurisdiction over all disputes arising out of grievances or out of the interpretation or application of the collective bargaining agreement concerning rates of pay, rules and working conditions.

19. In April 2019, a United Boeing 777 aircraft ("Aircraft 0003") operating a commercial flight from Shanghai Pudong International Airport ("PVG") to Newark Liberty

International Airport ("EWR") experienced an engine malfunction shortly after takeoff and returned to Shanghai.

20.     The aircraft remained grounded at Shanghai from approximately April 7, 2019, until approximately April 18, 2019, while maintenance was performed to replace one of its jet engines.

21.     United utilized personnel from China Eastern Airlines for some of the maintenance work on that aircraft.

22.     United also utilized its own supervisory personnel in order to return the aircraft to service, including for quality control inspections, work which is within the scope of the IBT-UAL Agreement and therefore required to be performed by IBT-represented Technicians. At least one such manager was flown from the United States to Shanghai to perform that work.

23.     United did not utilize any IBT represented hourly employees for the purpose of restoring Aircraft 0003 to service in April 2019, and did not invoke the procedures of Article 12, "Field Trips," of the Agreement or the Field Trip roster for the purposes of any work on that Aircraft while it was grounded overseas.

24.     On July 12, 2019, the IBT filed grievance No. IAH-QC-07-12-19 with United, alleging in part:

> 1. Employee's statement of grievance: Describe in detail the action giving rise to the complaint. Specify names, dates, classification, place and site of violation, etc.

> *Ac 003 engine r& r in PVG from 04-07-2019 thr 04-18-2019 was performed using management personel performing covered work with China Eastern personel support.* [sic]

> 2. Specify the Article(s) of the agreement and/or prior decisions which support the claim.

> *Article 1-1 B 1 through 1-2B3, Article 3, 12, 19 and any applicable articles that may apply.*

3. What is the remedy and/or relief sought?

*Have work performed by covered employees of CBA when so required/work group made whole for work performed and process established to fix.*

*See* **Ex. 2 (Grievance)** attached.

25.     The dispute over United's use of supervisors to perform hourly work raises a dispute over the interpretation or application of their collective bargaining agreement, including Article 1 "Scope" and Article 12 "Field Trips."

26.     The grievance procedure of the UAL-IBT collective bargaining agreement was invoked in a timely manner by the IBT by the filing of grievance IAH-QC-07-12-19.

27.     On December 19, 2019, the Parties' System Board of Adjustment deadlocked over the grievance. *See* **Ex. 3 (System Board Decision and Appeal)** attached.

28.     On January 30, 2020, the IBT advanced the grievance to arbitration. *See* **Ex. 3 (System Board Decision and Appeal)** attached.

29.     In Spring 2021, the Parties scheduled an arbitration hearing for May 4 and 5, 2021 to be held by videoconference before Neutral Arbitrator Marlene Gold.

30.     On April 29, 2021, United submitted a pre-hearing motion to dismiss to the Neutral Arbitrator, on the grounds that the "extraterritorial application" of the Agreement to work performed in Shanghai, China, and/or outside the United States, is improper and outside the jurisdiction of the System Board. The Neutral Arbitrator responded that she would consider that motion and rule on it after the record was complete.

31.     On May 3, 2021, the day prior to the scheduled start of the arbitration hearing, United, through counsel, emailed the Neutral Arbitrator and the IBT, stating in part:

The Company is cancelling the hearing scheduled for May 4 and 5, 2021, as we believe there is no System Board [*i.e.,* contractual Board of Arbitration] jurisdiction

over the matter. I understand the IBT objects, but the Company is not going forward
with the hearing.

*See* **Ex. 4 (Emails of May 3, 2021)** attached.

32.     The IBT, through counsel, responded that it disagreed with United's position and

attempt to cancel the hearing, and that it was prepared to proceed with the arbitration hearing.

*See* **Ex. 4 (Emails of May 3, 2021)** attached. The Neutral Arbitrator, however, declined to

proceed without United's voluntary participation.

33.     The arbitration hearing was not held, the IBT has been unable to prevail upon

United to submit the grievance to arbitration, and the grievance remains unresolved.

## CAUSES OF ACTION

## COUNT ONE – VIOLATION OF RLA SECTION 2, FIRST
## 45 U.S.C. § 152, FIRST

34.     The IBT incorporates by reference paragraphs 1 to 33 as if restated herein:

35.     Section 2, First of the RLA, 45 U.S.C. § 152, First, governs the duty of carriers

and employees to settle disputes. It provides in part that:

> It shall be the duty of all carriers, their officers, agents, and employees to exert
> every reasonable effort to make and maintain agreements concerning rates of pay,
> rules, and working conditions …

36.     The Supreme Court has described Section 2, First as "[t]he heart of the Railway

Labor Act." *Bhd. of R.R. Trainmen v. Jacksonville Terminal Co.*, 394 U.S. 369, 377 (1969).

37.     By refusing to arbitrate a grievance arising under the UAL-IBT collective

bargaining agreement United has failed to exert every reasonable effort to maintain the

agreement, in violation of Section 2, First of the RLA.


## COUNT TWO – VIOLATION OF RLA SECTION 184
## 45 U.S.C. § 184

38.     The IBT incorporates by reference paragraphs 1 to 37 as if restated herein:

39.     Section 204 of the RLA, 45 U.S.C. § 184, governs the resolution of minor

disputes as applied to the airline industry and provides for the compulsory arbitration of such

disputes through boards of adjustment. It provides in part:

> The disputes between an employee or group of employees and a carrier or carriers
> by air growing out of grievances, or out of the interpretation or application of
> agreements concerning rates of pay, rules, or working conditions … shall be
> handled in the usual manner up to and including the chief operating officer of the
> carrier designated to handle such disputes; but, failing to reach an adjustment in
> this manner, the disputes may be referred by petition of the parties or by either party
> to an appropriate adjustment board …
>
> It shall be the duty of every carrier and of its employees, acting through their
> representatives, selected in accordance with the provisions of this subchapter, to
> establish a board of adjustment …
>
> Such boards of adjustment may be established by agreement between employees
> and carriers either on any individual carrier, or system, or group of carriers by air
> and any class of classes of its or their employees…

40.     By refusing to arbitrate a grievance arising under the UAL-IBT collective

bargaining agreement and by refusing to establish a System Board of Adjustment for such

purpose United violated and is violating Section 184 of the RLA.

## PRAYER FOR RELIEF

41.     WHEREFORE, the IBT respectfully requests that this Court grant the following

relief:

a.     Enter an order declaring that United's conduct in refusing to arbitrate a grievance

within the scope of the grievance and arbitration procedures of the UAL-IBT collective

bargaining agreement violates 45 U.S.C. §§ 152, First and § 184;

b.     Enter an order compelling United to comply with the grievance adjustment

procedures of the UAL-IBT collective bargaining agreement, and to convene on an

expedited basis the System Board, sitting with a neutral chair, to hear and decide finally

the grievance arising from the performance of work related to the Shanghai engine

replacement, and to comply fully with its obligations under the Railway Labor Act, in

connection with the resolution of the parties' dispute over the performance of such work.

c.       Enter an order directing United to cease from further refusal to arbitrate disputes

arising under the terms of the UAL-IBT collective bargaining agreement.

d.       Such other and further relief including damages, attorneys' fees, and costs that the

Court may deem just and proper.

Dated:  July ___, 2021                                    Respectfully Submitted,

                                                         s/ Patrick E. Deady
                                                         Patrick E. Deady
                                                         Hogan Marren Babbo & Rose, Ltd.
                                                         321 North Clark Street
                                                         Chicago, Illinois, 60654
                                                         Telephone: (312) 946-1800
                                                         Facsimile: (312) 946-9818
                                                         ped@hmbr.com

                                                         Jeffrey A. Bartos
                                                         John J. Grunert (*pro hac vice to be filed*)
                                                         Guerrieri, Bartos & Roma, P.C.
                                                         1900 M Street, NW, Suite 700
                                                         Washington, D.C.  20036
                                                         Telephone: (202) 624-7400
                                                         Facsimile: (202) 624-7420
                                                         jbartos@geclaw.com
                                                         jgrunert@geclaw.com

                                                         *Counsel for IBT*

# Exhibit 1



**UNITED**

# Collective Bargaining Agreement

between
**United Airlines, Inc.**
and
**The Airline Technicians**
and
**Related Employees**
and
**Flight Simulator Technicians**
and
**Related Employees**

In the Service of
**United Airlines**

As Represented by
**The International Brotherhood
of Teamsters**

2016 – 2022

\*\*\*

## PREAMBLE

This Agreement is made and entered into in accordance with the provisions of Title II of the Railway Labor Act, as amended, by and between United Airlines, hereinafter referred to as the "Company" and the International Brotherhood of Teamsters, hereinafter referred to as the "Union," representing the employees composing the Craft or Class of Mechanics and Related employees, as certified by the National Mediation Board in case R-7363 on August 6, 2013, and the Craft or Class of Flight Simulator Technician and Related Employees, as certified by the National Mediation Board in Case No. R-7353 on September 5, 2013. (For purposes of identification, this Agreement shall be known as the "Mechanics' Agreement").

## ARTICLE 1 – PURPOSE, SCOPE AND STATUS OF AGREEMENT

A. <u>Purpose</u>

1. The purpose of this Agreement is, in the mutual interest of the Company and of the employees, to provide for the operation of the services of the Company under methods which will further, to the fullest extent possible, the safety of air transportation, the efficiency of operation, and the continuation of employment under conditions of reasonable hours, proper compensation, and reasonable working conditions. It is recognized by this Agreement to be the duty of the Company and of the employees to cooperate fully, both individually and collectively, for the advancement of that purpose.

2. No employee covered by this Agreement will be interfered with, restrained, coerced, or discriminated against by the Company, its officers or agents, because of membership in or lawful activity on behalf of the Union.

B. <u>Scope</u>

1. The Company hereby recognizes the Union as the sole collective bargaining agent and authorized representative for those employees composing the craft or class of Mechanic and Related Employees, as certified by the National Mediation Board in Case No R-7363, issued on August 6, 2013. The Company also hereby recognizes the Union as the sole collective bargaining agent and authorized representative for those employees composing the craft or class of Flight Simulator Technicians, as certified by the National Mediation Board in Case No. R-7353, issued on September 5, 2013.

2. All aircraft maintenance work, facilities maintenance work and ground equipment maintenance work on current, new or later acquired aircraft, or on current or later acquired ground equipment and facilities, performed for the Company is recognized as coming within the jurisdiction of the Union and shall be performed by employees on the United Airlines technician master seniority list, except as otherwise

provided in this Article. Additionally, all maintenance work and engineering functions on all current, new or later acquired flight simulator training devices and all other cabin training equipment that is owned, leased or operated at any Company training facility is recognized as coming within the jurisdiction of the Union and shall be performed by employees on the United flight simulator technician master seniority list, except as otherwise provided in this Article.

3. Supervisors and higher ranking officials shall not be permitted to perform work of any hourly rated job covered by this Agreement, except in emergencies as defined in Article 2, or when instructing, or training employees, or signing off work performed by covered employees, or troubleshooting.

4. Except as set forth in this Paragraph, the Company shall not contract out work. The parties agree that the Company may:

   a. Continue to contract out work heretofore customarily contracted out, provided that at locations where contracting out practices have differed between predecessor work groups, the Company will not rely on this paragraph 4.a to expand the contracting out of work customarily performed by employees at that location,

   b. Return equipment, parts, or assemblies to the manufacturer or to a manufacturer approved repair station for warranty work, repair or replacement,

   c. Contract out any work when the Company's facilities and equipment are not sufficient, or personnel are not available, provided that the effect of attrition or reduction in personnel is not the reason in whole or in part that sufficient personnel are not available, or where available employees do not have the qualifications, within the meaning of Article 3, to perform the work required, provided the effect of the Company's failure to maintain training heretofore customarily provided to employees is not the reason in whole or in part that available employees do not have the required qualifications,

✳✳✳

## ARTICLE 12 – FIELD TRIPS

A.  A Field Trip may be either planned (one for which more than four (4) hours advance notice prior to the scheduled Field Trip departure is provided to the employee), or unplanned (one for which four (4) hours or less advance notice prior to the scheduled Field Trip departure is provided to the employee). A Field Trip requires travel away from an employee's station, and may involve:

   1.  Returning aircraft or equipment requiring normal and non-reoccurring type maintenance to service, or

   2.  Performing maintenance at a point where regular maintenance is not assigned.

   3.  Accompanying and/or performing maintenance on Company charters.

   Notwithstanding the foregoing, a field trip does not include, and this Article shall not apply to, maintenance performed by ground equipment (GQ) technicians, buildings/facilities (PV) technicians, and Flight Simulator Technicians (FSTs) whose regular assignment includes field trips and related travel. However, GQ, PV, and FST employees who are not regularly assigned to perform field trips shall be covered by this article.

B.  Employees on Field Trips away from their base or station shall be paid one and three-quarters (1.75X) times their hourly base rate of pay, as defined in Article 15 (Compensation), for all time away from base.

C.  Upon request the Company will provide a reasonable sized rental car for up to three (3) employee(s) on a Field Trip so long as the employee provides receipts for the rental. These reimbursements will be in addition to the per diem expenses provided for in Article 15 (Compensation).

D.  Upon completion of such Field Trip, an employee shall return to his base or station in accordance with the orders received at the time he left his base or station or in accordance with the orders received most recently from management, and shall be compensated for the return trip in accordance with the provisions of this Article. Upon return to his home station, an

employee shall return to his regular scheduled shift at the applicable straight or overtime rate. If the employee has not had a rest period of at least eight (8) hours within the preceding sixteen (16) hour period, he will be entitled to a rest of not less than eight (8) hours before starting his next regular scheduled shift. In the event there is not sufficient time to permit an eight (8) hour rest period prior to starting his next regularly sched-uled shift, he shall be treated as provided in Article 17, paragraphs (G)(1) and (G)(2). It is understood that for the pur-pose of this paragraph, an employee directed to work without the required eight (8) hour rest period will be paid at a rate of two times (2X) the employee's hourly base rate of pay as defined in Article 15 (Compensation).

E. When Field Trip work cannot be performed by only one (1) employee due to heavy lifting requirements, safety, or other factors which require more than one (1) employee to accom-plish the work, then the Company shall dispatch the employees necessary to accomplish the Field Trip. It is further understood that no employee shall be dispatched for a Field Trip to a sta-tion where no other person is available to render assistance in the event of an emergency. Prior to dispatching a single employee on a trip the Company shall provide the employee the contact information of the person responsible for providing this assistance.

F. The Company will maintain Field Trip records, including archives of at least one (1) year, and will make them available to the Union upon request. These records will be separate and apart from the overtime records. Records will be maintained sepa-rately for each Bid Area. There will only be one list per Bid Area for Field Trip call-outs. The Company shall, within thirty (30) days of ratification, combine the sCAL and sUAL Field Trip lists in accordance with the provisions of this Article. The Company will maintain Field Trip books or their electronic equivalent con-taining Field Trip sign-up records/sheets and the list used for each Field Trip call-out. Field Trip sign-up sheets and lists will contain the following information:

1. Employee name and number
2. Craft seniority date
3. Contact phone number(s)
4. Current shift and days off

5.  Date employee signed up

6.  Visa/passport information

7.  Any special authorizations held (such as engine run-up and taxi, RII, CAT, airworthiness release, ETOPS, NDT, etc.)

    a.  These authorizations may be used to determine the qualifications necessary for a specific Field trip. The number of employees required to possess certain special authorizations on any given Field trip shall be equal to the amount necessary as governed by either the United General Maintenance Manual (as it relates to paperwork and procedures, airworthiness releases, RII, engine run-up & taxi, CAT, ETOPS, NDT etc.) and/or international law (as it relates to visas and passports) and/or any applicable Federal Aviation Regulations (FARs).

        Note:  Whenever it is known that an Inspector will be required on a Field Trip, and no Inspectors are available at the location of the Field Trip, the Inspector will be selected, in accordance with this Article, from Bid Area 301 at the station staffing the Field Trip.

    b.  An employee who has been required to use a passport and/or visa in conjunction with travel for a Field Trip shall be entitled to reimbursement from the Company for the cost of those documents.

8.  A column for office use only, to be used at the time of the call outs (not necessary for sign-up sheets).

G.  Employees desiring to participate in Field Trips will be required to sign up in the Field Trip book, or its electronic equivalent. As employees accept (unless the Field Trip is cancelled) or refuse a Field Trip their names will be moved to the bottom of the list. Employees passed over due to lack of special authorizations will remain in the same position on the list until they are selected for or refuse a Field Trip. Employees will not be bypassed for lack of authorizations unless all remaining Field Trip positions require such authorizations. Employees desiring to participate in Field Trips after the sign-up period, as well as new or transferring employees will have their names placed at the bottom of the list. It will be the responsibility of each

employee to make sure their current shift and day-off pattern is current in the Field trip book when they change such shift and/or day-off pattern.

H.  The Company will determine which Bid Area List each individual Field Trip is assigned to and make the Field Trip call-out, in accordance with the following:

1.  For unplanned Field Trips (i.e.: where the call-out procedure commences four (4) hours or less prior to the scheduled departure of the Field Trip), selection will be from the shift on duty.

    a.  At stations where two or more shifts overlap and it is necessary to select employee(s) for a Field Trip from the shift on duty, the employee(s) sent will be those closest to the end of their regular scheduled work day.

2.  For planned Field Trips (i.e.: where the call-out procedure commences more than four (4) hours prior to the scheduled departure of the Field Trip) selection will be from the Field Trip list without regard to shift, keeping in mind that employees on their regular days off or at home (off shift) may be eligible for a planned Field Trip. Planned Field Trips will not be called out more than seven (7) calendar days in advance.

    Note:  For purposes of clarification of this provision, when a list is started for a planned field trip, such list shall be exhausted regardless of the time frame; i.e. a planned list is being used and the time before the trip becomes less than four (4) hours a new list will not be used until the planned list has been exhausted.

I.  The Company will determine the Bid Area from which employees are to be sent and will contact the next available qualified employee, using a company land line, who has signed the Field Trip book or its electronic equivalent. Upon contact the employee will be given the location and nature of the Field Trip. If the assignment is refused, the next employee in line will be contacted, etc., until the required number of employees are obtained. When calling from the shift on duty and the required number of employees are not obtained and an entire shift's list has been called, the Company shall, starting from the top,

utilize the Field Trip List in its' entirety without regard to shift. If the required number of employees is still not obtained, employees from another station may be utilized. If the required number of personnel are still not obtained, the trip may be assigned to the junior qualified employee(s) in the appropriate shift/Bid Area, or at the Company's option, the Field Trip may be canceled.

J.  All overtime hours paid in conjunction with a Field Trip will be transferred onto the employees' overtime hours as defined in Article 17, Overtime.

K.  When a hotel room is required while on a field trip, the Company will provide a single room to the employee at no cost. When possible, the Company will arrange for the direct billing of the hotel room.

L.  Employees shall be required to travel to Field Trips by air only on U.S. carriers operating under FAR Part 121, or scheduled carriers under FAR Part 135 (or successor regulations) or foreign air carriers who are members of IATA, or with the employee's concurrence, comparable air carriers (e.g., Lear Jet operators).

M.  Employees required to travel on an extended Field Trip shall be given a written itinerary and flight manifest (if traveling with flight crew employees of the Company in conjunction with the same trip or charter) showing their trip destinations, hotel accommodations (to the extent required) and hotel transportation, as well as other information necessary to facilitate the Field Trip.

N.  Employees who are bypassed in violation of Field Trip distribution procedures set forth in this Article will be treated in accordance with Article 17.K.

O.  In the event a field trip is canceled, an employee who is not on-shift at his station who is notified of the cancelation after he arrives: (a) at a location other than his station or (b) at a time prior to his regular shift start time, for purposes of working or traveling to the location of the field trip; will be released from duty and be entitled to four (4) hours of straight-time pay.

P.   Global Emergency Maintenance

When a Global Emergency Maintenance (GEM) mission is assigned as a Field Trip, the Company will follow the Field Trip provisions set forth in this Article when it assigns employees covered by this Agreement to work GEM assignments. It is understood, however, that although the Company will consider local resources in making such assignments, the Company may choose to perform GEM work at a station with employees from another station. In such cases the Company will confer with the Local Union Committee at the station where the work is scheduled to be done to explain the need for such assignments.

Q.   Once a respective station is notified that it has been selected to support a Field Trip, then that station will initiate calling out the Field Trip no later than one hundred and twenty (120) minutes after such notification.

R.   If the Company determines that it has a surplus of employees on a Field Trip then it will reduce the surplus by sending employees home in inverse order of the Field Trip call-out. No employee will be sent home outside of this order unless the only remaining position requires an authorization that the employee does not possess.

✱✱✱

## ARTICLE 19 – GRIEVANCE PROCEDURE

A. Grievance Procedure

Should a grievance occur, both the Union and the Company shall make an earnest effort to ascertain the facts and seek a fair and equitable settlement through the following procedures. It is the intent of the parties to settle complaints and grievances at the lowest possible level in the procedure based upon the facts and common sense. Grievance settlements involving wage claims will be included in the paycheck for the pay period immediately following the pay period in which the award was granted. Should such payment be delayed for any reason, an explanation will be provided upon request.

B. Grievances Involving Interpretation Or Application Of The Agreement

In the event of a grievance arising over the interpretation or application of this Agreement or in the event of disciplinary action, not involving loss of pay, the following procedure shall be followed:

**<u>FIRST STEP</u>**

1. The aggrieved employee will first present the complaint to his supervisor for discussion and possible solution within thirty (30) days after the employee or his representative could reasonably have knowledge of the incident upon which the complaint is based. During this discussion, the employee will have the right, but not the obligation, to be represented by his shop steward or Local Business Representative. An employee who is to be questioned by Company Representatives in the investigation of an incident or accident which may result in disciplinary action, will be informed of his right to have a Union Representative present before such questioning begins. The Company shall be required to document and have the employee sign for any refusal of such Union representation. It is understood and agreed that decisions made at the first step of the grievance procedure by the supervisor, employee and/or his representative shall not constitute a precedent of any kind unless otherwise agreed to by the Union and the Company.

2. If the complaint cannot be resolved through a discussion, the grievance shall be reduced to writing by the employee and/or his representative, signed by the employee and/or his representative, and presented to his supervisor within ten (10) calendar days after the date of the discussion described in paragraph B.1 above.

3. The grievance will be answered in writing by the supervisor, who will send a copy to the grievant, the shop steward and the Union Representative, within ten (10) calendar days after he receives the written grievance.

**SECOND STEP**

4. If the decision of the supervisor is not satisfactory, the employee and/or his Union Representative may appeal the grievance directly to the Managing Director or his designee, provided such appeal is presented in writing within ten (10) calendar days after the written decision of the supervisor has been presented to the grievant, the shop steward, and the Union Representative.

5. The Managing Director or his designee will meet to hear the grievance(s) within ten (10) calendar days following the receipt of the written appeal. The grievant, the shop steward and the Local Union business agent shall be entitled to attend this meeting, and shall be allowed a reasonable opportunity to present relevant testimony and information. The Managing Director or his designee shall issue his decision in writing within ten (10) days after the presentation of such relevant testimony and information.

6. Within fourteen (14) calendar days after the receipt of the written decision of the Managing Director or his designee, if the decision is not satisfactory to the employee and his Union Representative, the Union may appeal such grievance to the System Board of Adjustment by serving a written notice to the Vice President of Maintenance or his designee at the Company's office.

C.  Discharge and Disciplinary Procedure

1.  In the event an employee is suspended pending investigation and subsequently such discipline is found to be without just cause, he will be paid for such lost time from work.

2.  In those instances where the Company discharges or disciplines a non- probationary employee to the extent of loss of pay, such disciplinary action will not be imposed until a fact/finding meeting is held between the employee's supervisor, and if needed, other Company designee, the employee, and his chief steward. Nothing shall preclude the Company's right to suspend any employee without loss of pay pending such meeting. The purpose of such meeting is to interview pertinent witnesses, establish pertinent facts and determine any possible solution, it being understood and agreed that decisions at such level shall not constitute a precedent. The Company representative involved will, within ten (10) calendar days after such meeting, render a decision in writing to the employee, unless further investigation is required, in which case the Company will notify the affected employee and the Union of the reasons for the delay. The affected employee shall remain in a paid status until such time as a decision is rendered.

3.  If the decision of the Company's representative is not acceptable to the Union, the decision may be appealed by the Union to the System Board of Adjustment within fourteen (14) calendar days after receipt, by serving written notice to the Vice President of Maintenance at the Company's Administrative Office.

4.  Notwithstanding any of the provisions of this Article, probationary employees are not entitled to file grievances under this contract regarding discipline or discharges, nor shall such employees be entitled to challenge discipline or discharges taken against them under this Agreement. The System Board's findings and decisions shall be final and binding upon the Teamsters – Airline Division, the Company, and the individual employee or employees to such dispute.

5.  In the event the Union appeals the disciplinary action to arbitration the Company and the Union shall attempt to

agree on a mutually acceptable impartial arbitrator. If the parties are unable to agree on an arbitrator they shall select an arbitrator as provided in Article 20, Board of Arbitration.

D. System Boards

1. The System Board of Adjustment ("the Board") shall be composed of two (2) members designated by the Company and two (2) members designated by the Union. The Board will meet on a monthly or bi-monthly basis upon mutual agreement by the Parties during the course of the calendar year at stations throughout the system on a rotating basis. Dates for the Board shall be mutually agreed upon prior to the beginning of each New Year. In advance of each hearing date, the parties' System Board Coordinators shall mutually agree as to which case shall be heard; in the event the Coordinators are unable to agree, the System Board Co-Chairmen shall promptly meet to resolve the dispute. The location of the Boards will be determined and mutually agreed upon at the end of each preceding Board. In the case of a discharge or a suspension resulting in loss of pay, the Board shall convene within thirty (30) calendar days of the date the discharge or suspension is appealed to the System Board of Adjustment. In the case of a discharge, the Board of Adjustment shall convene at the station where the discharged employee worked unless another city is mutually agreed to.

2. The System Board shall render a decision no later than thirty (30) calendar days after it has closed the record in the hearing of the case. If the Board deadlocks, the Union may appeal the case to arbitration.

E. General and Procedural Rules

1. An employee who serves as a witness and who is not released from his witness duty at least eight (8) hours prior to the start of his next regularly scheduled shift shall be excused from working that shift, but shall suffer no loss of pay as a result. Release from duty will be deemed to be at block-in if required to fly to return to his home.

2. The Union will be given a reasonable opportunity to secure the presence of necessary individual(s) to fairly conduct hearing and meetings required in connection with a grievance.

3. Upon request, the Union will be provided access to all documents and reports in the Company's possession on which the action taken was based. The Company will likewise be provided access to all documents on which the Union's case is based. Each Party shall be entitled to copies of any such documents that it may determine are needed.

4. Employees of the Company who are on duty and are called as witnesses for any of the proceedings described in this Article will suffer no loss of pay. In addition employees regularly scheduled to work swing shift or graveyard shift on the day preceding the hearing will be released with no loss of pay to accommodate travel time and provide ample rest. The number of witnesses summoned at any one time shall not be greater than the number that can be spared from the operation without interference with the services of the Company. If the Union or the Company deems necessary the testimony of witnesses (inclusive of management personnel directly involved in the case) the Company is unable to release, the proceedings may be adjourned until such time as the witnesses are able to testify. The parties agree to use their mutual best efforts to minimize the cost and the operational disruption potentially created by this provision. In System Board cases where testimony is cumulative (merely duplicating the testimony of other witnesses), or is otherwise not essential to the case, such evidence may be presented by sworn statement(s).

5. All time limits will be complied with by the Company, the employee(s), and the Union. If the Company does not comply with the time limits, the grievance will be deemed automatically appealed to the next step. Any Company answers not appealed by the Union in writing within twenty (20) days of the specified time limits at any step of the procedure shall be considered closed on the basis of such answer. It is recognized that Company or Union representatives may request reasonable time limit extensions, and the parties may mutually agree to extend any of the time limits in this Article.

6. It is agreed by the parties hereto that the periods of time for hearings, decisions, and appeals established in this section shall be considered as maximum periods and that when

hearings, decisions, and appeals can be handled in a period of less than the maximum time stipulated, every effort will be made so as to expedite such cases.

7.  The Company recognizes the right of the Union to file a group grievance when the issue is common and identical to those employees in the group.

8.  In the event of permanent change of the parties responsible for answering grievances at any step of this grievance procedure, the Company will notify the Union as soon as possible.

9.  With written authorization of the employee, the Union, or its representative, and/or the Grievant shall have access to the Grievant's personnel file for review. The Union shall be entitled to copies of any documents from the file that it may determine are needed. When requested by either the Company representative or the Union representative, the System Board shall summon any witness (es) who are employed by the Company and are deemed necessary to the dispute by the System Board.

10. Where unknown evidence or documentation not previously shared with the Union or the Company is introduced at the System Board and/or Arbitration, the System Board or Arbitrator will allow sufficient time for review of the new evidence.

F.  Disclosure

Both parties shall agree to a discovery process and they shall be compelled to disclose, to each other, all data/documents and the names of the witnesses to be presented no later than fifteen (15) calendar days prior to the actual date of the System Board of Adjustment and/or Arbitration. Any data/documents or witnesses given to the other within fifteen (15) calendar days of the System Board and/or Arbitration must be disclosed as soon as possible but in all cases no less than forty-eight (48) hours prior to the actual System Board of Adjustment and/or Arbitration. If either party receives a late document or witness list it shall have the option to adjourn the hearing in light of the new document or witness list or take the necessary time for review of the new evidence.

***

## ARTICLE 20 – BOARD OF ARBITRATION

A.  The parties shall, in August of each year, agree upon and select arbitrators and arbitration hearing dates to be scheduled in the following year; if unable to agree upon arbitrators, the parties shall request fifteen (15) lists of arbitrator panels from the National Mediation Board and shall, by alternate strike method, select fifteen (15) arbitrators that will compose that year's agreed-upon panel of arbitrators. The parties will jointly solicit dates from the agreed upon arbitrators, and shall endeavor to schedule no less than four (4) days each month for hearing cases appealed to the Board of Arbitration. No later than sixty (60) days in advance of each hearing date, the parties shall mutually agree as to which case shall be heard; in the event the parties are unable to agree, the earliest-filed case remaining unresolved shall be heard. The Board of Arbitration shall consist of one (1) member selected by the Union and one (1) selected by the Company, and the impartial Arbitrator.

B.  The parties shall enter into a submission agreement, which shall clearly state the arbitral issue or issues to be decided. If the parties are unable to agree on a joint statement of the arbitral issue or issues to be decided by the arbitrator, the submission shall contain the written grievance and the Company's disposition of the same with notation that the parties could not agree upon a submission agreement. Either party may also submit its proposed version of the arbitral issue or issues to be decided by the arbitrator.

C.  During the hearing, each Party shall have full opportunity to present evidence and argument, both oral and documentary. The impartial arbitrator shall be asked to render his findings and award in writing no later than sixty (60) calendar days after the conclusion of the hearing or receipt of the post hearing briefs. The decision of the impartial arbitrator shall be final and binding. The impartial arbitrator shall have no authority to modify, amend, revise, add to or subtract from any of the terms or conditions of the Agreement.

D.  All arbitration hearings will be held in Chicago unless another place is mutually agreed to by the Company and the Union. In cases of discharge the Board shall meet where the discharged employee worked, unless another city is mutually agreed to.

**Article 20**                                                    **Board of Arbitration**

1. Each of the parties hereto shall assume the compensation, traveling expenses and other expenses of its witnesses called or summoned by it and each of the parties shall assume one-half (1/2) of the expenses of the arbitration, except that the employees of the Company who are necessarily summoned to serve as witnesses and the grievant, if not discharged or on suspension, will suffer no loss of pay as a result of participation in the arbitration proceeding.

2. Witnesses who are employees of the Company and the grievant shall receive non-revenue positive space (NRPS) transportation over the lines of the Company from their point of duty or assignment to the point at which they must appear as witness before the Board and return, to the extent permitted by law.

3. It is understood and agreed that each and every witness summoned by the Board who is an employee of the Company shall be free to discharge his duties in an independent manner without fear that his individual relations with the Company or the Union may be affected by an action or by testimony given by him in good faith in his capacity as a witness.

4. If a stenographic transcript is made of the arbitration proceeding the party making the request shall bear its expense, unless the request is made by the arbitrator, in which case the cost of the transcript will be shared equally by the Company and the Union. In the event the party not requesting the transcript decides at the hearing or later to obtain a copy, the Company and the Union shall share the entire cost of the reporting and transcribing of the transcript equally.

E. The provisions of Article 19, paragraphs E.1, 2, 3, 4, 9 and 10, and paragraph F also apply to this Article.

F. Decisions rendered pursuant to this Article may not add to, subtract from, or alter in any way the Agreement, but may only interpret or apply it.

✱✱✱

## ARTICLE 24 – DURATION

This Agreement shall become effective on **December 5, 2016** and shall remain in full force and effect until **December 5, 2022**, and shall renew itself without change for successive one year periods thereafter unless written notice of intended change is served in accordance with Section 6, Title I of the Railway Labor Act as amended by either part hereto within **three hundred and sixty five (365)** days prior to the renewal date.

If conferences pursuant to either notice do not produce full agreement on all changes to the terms of this Agreement, then all noticed terms shall become null and void thirty (30) days after the National Mediation Board has finally acted upon the controversy as required by Section 5, Title I of the Railway Labor Act, or when ten (10) days have elapsed after termination of conferences without a request for or proffer of the services of the National Mediation Board. In such case, both parties hereto shall be fully entitled to exercise the complete panoply of self- help rights as they may individually deem desirable or advisable.

IN WITNESS WHEREOF, the parties hereto have signed this Agreement this 5th day of December, 2016.

For United Air Lines, Inc.:              For the International
                                         Brotherhood of Teamsters:


/s/ Greg Hart                            /s/ Captain David Bourne
_____                _____
Greg Hart                                Captain David Bourne
Executive VP & COO                       Director, Airline Division
United Continental Holdings, Inc.        International Brotherhood
                                         of Teamsters


/s/ Mike Bonds                           /s/ Clacy Griswold
_____                _____
Mike Bonds                               Clacy Griswold
Executive VP, HR & Labor Relations       Chairman
United Continental Holdings, Inc.        International Representative


/s/ P. Douglas McKeen                    /s/ Robert Fisher
_____                _____
P. Douglas McKeen                        Robert Fisher
Senior VP, Labor Relations               International Representative
United Continental Holdings, Inc.

# Exhibit 2

# TEAMSTERS LOCAL 19

## Grievance Form

151 Northpoint Drive
Houston, Texas 77060
Phone: (713) 672-8155
(888) 864-6619
Fax: (713) 672-9622
www.teamsterslocal19.org

| | | | |
|---|---|---|---|
| Todays Date: | 07-12-2019 | Seniority Date: | 07-30-1984 |

Name: Daniel Stunda/Group    Email Address: nadadnuts@sbcglobal.net

Address: 11999 Forest View Trail

City: Conroe    State: Texas    Zip: 77385

Home Phone: 281-221-4040    Cell Phone: 281-802-7973    Work Phone: 281-802-7973

Employer: United Airlines    Classification: Inspector

Emp #: u253590    Station: IAH    Work Area: INSP    Shift: Day

Immediate Supervisor's Name: Joe Shappee    Phone #:

1. Employee's statement of grievance: Describe in detail the action giving rise to the complaint. Specify names, dates, classification, place and site of violation, etc. Ac 003 engine r& r in PVG from 04-07-2019 thr 04-18-2019 was performed using management personel performing covered work with China Eastern personel support.

2. Specify the Article(s) of the agreement and/or prior decisions which support the claim. Article 1-1B 1 through 1-2B3, Article 3, 12 ,19 and any applicable articles that may apply.

3. What is the remedy and/or relief sought? Have work performed by covered employees of CBA when so required/work group made whole for work performed and process established to fix

I hereby authorize the Airline Division, International Brotherhood of Teamsters Local 19 to act for me in the disposition and settling of this grievance.

Date: 07-12-2019    Employee Signature:

Date: 07-12-2019    Steward Signature:

Date submitted to supervisor:    Decision of immediate Supervisor:

Date of Decision:    Supervisor's Signature:    Title:

Date Steward Received:    Steward Signature:    Date:

Grievance Settled:    Yes:    No:

Case Appealed to System Board, Discharge Board or System of Adjustment by Union Representative of Local 19

By:    Title:    Date:

*Once you have completed all areas of this form please fax to the number lsited above, or mail/deliver to the address above*

# Exhibit 3



# International Brotherhood of Teamsters
# Arbitration Appeal Form
(ATTACH GRIEVANCE FORM AND DECISION OF SYSTEM BOARD)

**GRIEVANCE NUMBER** _____ **IAH-QC-07-12-19** _____

**DATE DEADLOCKED AT SYSTEM BOARD** __**12-17-2019**_____

**BRIEF STATEMENT OF THE ISSUE** __United Airlines utilizing Inspection management to perform bargaining unit work.__ _____

**REMEDY REQUESTED** Work to be performed by bargaining unit employees under the Teamster and Related CBA. Employees to be made whole for violation of the agreement and the amount to be included as pensionable and profit sharing earnings.

**SUBMITTED BY**

*Robert W. Carver* (signature)

**DATE**

**January 30, 2020**

**Email this form within <u>40 days</u> of the SBA decision to the following people:**
Elizabeth Yap (elizabeth.yap@united.com),
Leia DeVita (leia.devita@united.com),
Eric Mennel (Eric.Mennel@united.com),
Deirdre Hamilton (dhamilton@teamster.org),
Christina Groves (CGroves@teamster.org),
Paul Alves (palves.ibt@gmail.com), and
Vincent Graziano (vgraz45@aol.com)
Mark Mclean (mark.mclean@united.com)
Dave Young (david.g.young@united.com)

04/25/2018

# System Board of Adjustment
## United Airlines
## and
## International Brotherhood of Teamsters

Case #: IAH-QC-07-12-19                    Location: IAH

Grievant(s): Daniel Stunda et al            Employee(s) #: 77385

Issue: Inspection work in China            Article(s): Art. 1 paragraph B.3.

Hearing Date: 12/17/2019

## Decision:

The board is deadlocked in this matter.

| | | | |
|---|---|---|---|
| Clacy Griswold | 1/15/20 | Thomas Reardon | 12/30/19 |
| IBT International Representative | Date | Managing Director, Labor Relations - Ground | Date |
| Dave Saucedo | 12/30/19 | Chris Carrick | 12/30/19 |
| Business Agent, Local 986 | Date | Managing Director, Line Maintenance | Date |

*The date of the latest signature shall be the date of the Board decision.*

1

# Exhibit 4

| From: | Marlene Gold |
| To: | Jeff Bartos; Harrison, W. Chris |
| Cc: | Eric.Mennel@united.com; Reardon, Thomas - LR; elizabeth.yap@united.com; John Grunert |
| Subject: | Re: Disclosure of Additional Exhibits |
| Date: | Monday, May 3, 2021 6:18:25 PM |

Mr. Bartos:

 I am disturbed at Company counsel's unilateral cancellation of tomorrow's hearing on the eve of the hearing. As I do not have the authority to compel their appearance and participation, the matter will not proceed tomorrow. Please be advised that it is my practice to charge the party cancelling the arbitration for the late cancellation, in this case the Company.

Marlene Gold

On May 3, 2021, at 5:57 PM, Jeff Bartos <jbartos@geclaw.com> wrote:

Arbitrator Gold,

The IBT does not agree to this attempt to unilaterally cancel the hearing.  As you have already indicated, United's claim regarding the application of the CBA in this case will be resolved following the hearing.  We strongly object to this second last minute effort to avoid having this matter heard under the contractual process.

The IBT is ready to proceed tomorrow as scheduled, and intends to do so.

Respectfully,

Jeff Bartos

---

**From:** Harrison, W. Chris <chris.harrison@ogletree.com>
**Sent:** Monday, May 3, 2021 4:40 PM
**To:** Marlene Gold <mgoldarb@gmail.com>
**Cc:** Jeff Bartos <jbartos@geclaw.com>; Mennel, Eric <Eric.Mennel@united.com>; Reardon, Thomas - LR <thomas.reardon@united.com>; Yap, Elizabeth <Elizabeth.Yap@united.com>; John Grunert <jgrunert@geclaw.com>
**Subject:** RE: Disclosure of Additional Exhibits

Arbitrator Gold,

The Company is cancelling the hearing scheduled for May 4 and 5, 2021, as we believe there is no System Board jurisdiction over the matter. I understand the IBT objects, but the Company is not going forward with the hearing. The Company and the IBT continue to have discussions about the

matter so please hold off on sending the bill for a day or two until we have clarity on that.  Thank you for your attention to this matter.

Sincerely
Chris

**W. Chris Harrison | Ogletree, Deakins, Nash, Smoak & Stewart, P.C.**
International Place, Tower II, 6410 Poplar Avenue, Suite 300 | Memphis, TN 38119 | Telephone: 901-766-4311 | Fax: 901-767-7411
chris.harrison@ogletree.com | www.ogletree.com | Bio

---

**From:** Marlene Gold <mgoldarb@gmail.com>
**Sent:** Monday, May 3, 2021 2:53 PM
**To:** John Grunert <jgrunert@geclaw.com>
**Cc:** Harrison, W. Chris <chris.harrison@ogletreedeakins.com>; Jeff Bartos <jbartos@geclaw.com>
**Subject:** Re: Disclosure of Additional Exhibits

**[Caution: Email received from external source]**

---

Received.
Thank you.
Marlene Gold

Sent from my iPhone

On May 3, 2021, at 3:38 PM, John Grunert <jgrunert@geclaw.com> wrote:

Arbitrator Gold and Counsel,

Pursuant to Articles 19.F and 20.E of the 2016 IBT-UAL agreement, please find attached two further documents, Union Exhibits 19 and 20, for use in the hearing. The attached documents are additions to the Union's exhibit binders, containing Union Exhibits 1-18, which have already been mailed to all parties.

Thank you, -John

John Grunert
Guerrieri, Bartos & Roma, P.C.
1900 M St, NW, Suite 700
Washington, DC  20036-3518
(202) 624-7400
jgrunert@geclaw.com

*This e-mail may contain information that is private, confidential, or protected by attorney-client or other privilege. If you received this e-mail in error, please delete it from your system, including any attachments, without copying it and notify sender by reply e-mail, so that our records can be corrected.*

<Ex. 19 T. Meyer Employee Records.pdf>
<Ex. 20 Emails IBT and UAL May-July 2019.pdf>